UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN D. HAMLET, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:20-cv-01520-JPH-DLP |
| ) | |
| WARDEN, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner Kevin D. Hamlet was convicted of theft in an Indiana state court. Mr. Hamlet now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, Mr. Hamlet's petition for a writ of habeas corpus is **denied**, and a certificate of appealability will not issue.

## I.
## Background

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On appeal of the denial of Mr. Hamlet's state petition for post-conviction relief, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

> On June 23, 2016, Hamlet was charged with Class A misdemeanor theft after he was caught trying to deprive Walmart of the value of certain containers of beer and liquor. The charge was enhanced to a Level 6 felony because of a prior conviction. Hamlet pled guilty to the enhanced Level 6 felony charge. The trial court subsequently accepted Hamlet's plea, entered judgment of conviction for Level 6 felony theft, and sentenced Hamlet to a two-year term, all of which was to be executed in community corrections. Hamlet filed a PCR petition on November 15, 2016. Following an evidentiary hearing, the post-conviction court denied Hamlet's PCR petition.

1

*Hamlet v. State*, 2018 WL 4659137, *1 (Ind. Ct. App. 2018) (available in the record at dkt. 14-7).

The Indiana Court of Appeals affirmed the post-conviction court, and the Indiana Supreme Court denied his petition to transfer. Dkt. 14-3.

Mr. Hamlet filed the instant petition for a writ of habeas corpus on February 22, 2019. Dkt. 1. Mr. Hamlet's petition argues that his trial counsel was ineffective because she failed to inform him that he was not eligible for a habitual offender sentencing enhancement, rendering his guilty plea involuntary, and that the state post-conviction court denied him due process by failing to consider the audio recordings of his guilty plea hearings. Mr. Hamlet's petition also raised a prosecutorial misconduct claim, which he later withdrew. Dkt. 20-1 at 7.

## II.
## Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking

in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

### III.
### Discussion

A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) counsel rendered deficient performance that (2) prejudiced the petitioner. *Id.* "This inquiry into a lawyer's performance and its effects turns on the facts of the particular case, which must be viewed as of the time of counsel's conduct." *Laux v. Zatecky*, 890 F.3d 666, 673–74 (7th Cir. 2018) (citation and quotation marks omitted). *Strickland* "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

"As for the performance prong, because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight, *Strickland* directs courts to adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Laux*, 890 F.3d at 674 (citation and quotation marks omitted). "To demonstrate prejudice arising from a guilty plea allegedly rendered involuntary by counsel's deficient performance, a petitioner must establish that counsel's performance was objectively unreasonable and that, but for counsel's erroneous advice, he would not have pleaded guilty." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000).

4

The parties agree that Mr. Hamlet was ineligible for the habitual-offender enhancement. Mr. Hamlet argues that he was wrongly threatened with the enhancement and that this influenced him to plead guilty. At the post-conviction hearing held in state court, Mr. Hamlet and trial counsel gave conflicting testimony about whether the deputy prosecutor ever threatened to file a habitual-offender enhancement or whether trial counsel ever told Mr. Hamlet of such a threat. PCR Trans., dkt. 15-6 at 26-27, 31-33. The post-conviction court found trial counsel's testimony—that all parties knew Mr. Hamlet was not habitual eligible—more credible than Mr. Hamlet's testimony that he had been threatened with the enhancement. The post-conviction court determined that trial counsel did not perform deficiently, and that Mr. Hamlet was never told that he was eligible for the habitual-offender enhancement.

The Indiana Court of Appeals deferred to the post-conviction court's credibility determination and affirmed the post-conviction court's ruling, holding that "trial counsel appropriately discussed the potential penalties Hamlet faced and worked to resolve the case in accordance with Hamlet's wishes." *Hamlet*, 2018 WL 4659137 at *3. This was a reasonable application of *Strickland*. Mr. Hamlet is not entitled to relief.[1]

---

[1] Mr. Hamlet's petition asserts as a separate ground for relief that his plea was involuntary. "[T]he Constitution prohibits a court from accepting a criminal[] defendant's guilty plea 'without an affirmative showing that it was intelligent and voluntary.'" *Dansberry v. Pfister*, 801 F.3d 863, 864 (7th Cir. 2015) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). The Indiana Court of Appeals did not address an independent claim that Mr. Hamlet's plea was involuntary. But because this claim is based solely on Mr. Hamlet's claim that his counsel misinformed him about his ineligibility for the habitual offender enhancement, a claim the state court rejected, no further analysis was necessary. There is no indication in the record that Mr. Hamlet's plea was anything other than knowing, intelligent, and voluntary. He was informed of the sentencing range for a level 6 felony and the rights he waived by pleading guilty. Dkt. 15-7 at 33-39. He acknowledged that his plea was voluntary. *Id.* at 39.

## IV.
## Guilty Plea Transcripts and Audio Recordings

Mr. Hamlet also argues that the state post-conviction court violated his Fourteenth Amendment rights when it failed to consider jail phone calls between him and his attorney. States are not required by the federal Constitution to provide collateral review of criminal convictions. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). "Unless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, errors in state collateral review cannot form the basis for federal habeas corpus relief." *Flores-Ramirez v. Foster*, 811 F3d 861, 866 (7th Cir. 2016) (quoting *Montgomery v. Meloy,* 90 F.3d 1200, 1206 (7th Cir.1996)).

Although Mr. Hamlet characterizes this claim as a constitutional issue, it is instead a challenge to Indiana's post-conviction procedures and therefore not cognizable on habeas review. *Jones v. Butler*, 778 F.3d 575, 586 (7th Cir. 2015) (holding that state court's denial of post-conviction evidentiary hearing, which petitioner claimed "was a violation of his due process rights," was a challenge to state post-conviction procedures and therefore not cognizable on habeas review).

However, the state post-conviction court reviewed audio recordings of Mr. Hamlet's guilty plea hearings, and his state court appellate filings contained argument about those recordings.[2] Therefore, this Court reviews the audio recordings of the guilty plea hearings in the context of Mr. Hamlet's claim that his attorney's ineffective assistance rendered his guilty plea involuntary.

At his state post-conviction hearing, Mr. Hamlet argued that the transcripts did not accurately reflect what was said at the hearings. The post-conviction court said it would review

---

[2] The trial court continued Mr. Hamlet's guilty plea hearing to give him additional time to consider his options, so there are two transcripts and two audio recordings in the record.

the audio recordings when ruling on Mr. Hamlet's petition, but the court's ruling did not mention the audio recordings. The Indiana Court of Appeals concluded that the audio recordings must not have supported Mr. Hamlet's recollection of the hearings. *Id*. This was a reasonable conclusion.

Furthermore, this Court has reviewed the audio recordings and confirmed that Mr. Hamlet was not misled about his eligibility for the habitual-offender enhancement during either court proceeding. Dkt. 35. The only mention of the habitual-offender enhancement is a recitation from the guilty plea that the State was not seeking the enhancement. Trial counsel testified at the post-conviction hearing that this portion of the guilty plea document was "surplusage" likely left in the document when it was copied from prior plea agreements. Dkt. 15-6 at 26. The inclusion of that statement in the guilty plea does not, by itself, render Mr. Hamlet's plea involuntary. Mr. Hamlet recalls that, when he was asked by the judge if he had been threatened or coerced into accepting the plea, he stated that the prosecutor threatened to file the habitual-offender enhancement and that the judge affirmed that the State could have filed the enhancement. Dkt. 20-1 at 2. Mr. Hamlet's recollection is not supported by the audio recordings, which are consistent with the transcripts and do not contain any mention by any party or the judge of the prosecutor threatening to file the habitual-offender enhancement if Mr. Hamlet refused to plead guilty. Guilty Plea Trans., Dkt. 15-7.

## V.
## Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of

appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." No reasonable jurist would disagree that the Indiana Court of Appeals reasonably applied federal law when it held that Mr. Hamlet's trial counsel did not perform deficiently or that his Fourteenth Amendment claim regarding the post-conviction court's review of audio recordings is not cognizable on habeas review. Therefore, a certificate of appealability is **denied**.

## VI.
## Conclusion

Mr. Hamlet's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied**, and a certificate of appealability shall not issue.

Final Judgment in accordance with this decision shall issue.

**SO ORDERED.**

Date: 2/7/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

KEVIN D. HAMLET
4901 E. 31st Street
Indianapolis, IN 46218

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov